# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER V. MARINI, | : |
|     Plaintiff, | : |
| | : |
| v. | :   3:11-cv-00331 (JAM) |
| | : |
| COSTCO WHOLESALE CORPORATION, | : |
|     Defendant. | : |

## RULINGS ON PENDING MOTIONS

Plaintiff Peter Marini is a former employee of defendant Costco Wholesale Corporation (Costco). He alleges that he was subject to on-the-job discrimination at Costco because he has Tourette's syndrome, a neurological disability that causes pain, stiffness, and a series of noticeable "tics" or involuntary movements and vocalizations. After he complained about discrimination, he decided to secretly tape-record many of his interactions with co-workers and customers for nearly two years. Soon after defendant Costco learned of plaintiff's secret tape recordings, it fired plaintiff from his job.

Plaintiff's lawsuit principally alleges claims of hostile work environment and retaliation under the American with Disabilities Act (ADA) and the Connecticut Fair Employment Practices Act (CFEPA), as well as state law claims for breach of contract, for promissory estoppel, and for intentional infliction of emotional distress.[1] Among numerous pending motions, defendant has moved for summary judgment on all claims.

For the reasons set forth below, I will grant in part and deny in part defendant's motion for summary judgment as follows:

---

[1] The Court has federal-question jurisdiction under 28 U.S.C. § 1331 over plaintiff's federal law claims. Because plaintiff and defendant are from two different states and it appears that the amount-in-controversy at the time of filing of plaintiff's complaint was in excess of $75,000, the Court has diversity jurisdiction under 28 U.S.C. § 1332 over plaintiff's state law claims.

- ***Hostile work environment (Count One).*** As to plaintiff's hostile work environment claim, I GRANT defendant's motion for summary judgment. I conclude that the hostile work environment claim is time-barred because there is no genuine issue of fact to show that plaintiff was subject to a hostile act that was taken on the basis of his Tourette's syndrome within 300 days of his filing an administrative complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities.

- ***Breach of contract (Count Two).*** As to plaintiff's breach-of-contract claim, I GRANT in part and DENY in part defendant's motion for summary judgment. I conclude that a written employment contract existed between plaintiff and defendant and that a genuine issue of fact remains whether defendant violated the anti-harassment provisions of the employment contract. The anti-harassment provisions of the contract are not preempted and are broader than the harassment protections that exist by reason of background law under the ADA and CFEPA. As to other alleged violations of the employment contract, I conclude that no genuine issue of fact remains to establish a breach and/or damages from breach.

- ***Promissory estoppel (Count Three).*** As to plaintiff's promissory estoppel claim, I GRANT defendant's motion for summary judgment on the ground that plaintiff has abandoned the claim.

- ***Intentional infliction of emotional distress (Count Four).*** As to plaintiff's claim of intentional infliction of emotional distress, I GRANT defendant's motion for summary judgment. I conclude that principles of vicarious responsibility do not permit defendant on these facts to be liable for the harassment acts of its non-supervisory employees and

that any remaining employee acts do not rise to the level of egregiousness to allow for liability on grounds of intentional infliction of emotional distress.

- ***Retaliation (Count Five).*** As to plaintiff's retaliation claim, I GRANT defendant's motion for summary judgment. I conclude that there is no genuine issue of fact to suggest that plaintiff was fired because of any of his complaints about discrimination. I do not decide whether an employee may ever engage in covert tape recordings for the purpose of substantiating a claim of discrimination; I conclude only that plaintiff's blunderbuss recording of conversations having nothing to do with his lawsuit or disability was not protected activity and was an adequate basis for defendant to terminate plaintiff's employment. Plaintiff has not shown a genuine fact issue that defendant's stated basis for firing plaintiff was a pretext for disability discrimination.

## BACKGROUND

Plaintiff began working in 2001 at the Costco warehouse store in Milford, Connecticut. For his first seven years, he worked as a baker assistant in the Costco bakery department, until he transferred in summer 2008 to the Costco gas station where he remained until he was fired in late November 2011.

Throughout his time working in the bakery from 2001 to 2008, one of plaintiff's co-workers—Fred Muoio—allegedly subjected him to regular and sometimes severe harassment. Muoio ridiculed plaintiff's Tourette's syndrome, and he threatened and shouted at plaintiff. Plaintiff complained to both his direct supervisor and one level up to an assistant general manager. Although Muoio was reprimanded, the harassment abated only temporarily.

In spring 2008, plaintiff's physician sent Jeff Dawson, the general manager of the Costco store, a letter explaining that plaintiff was in pain and had migraine headaches in connection with

his Tourette's syndrome. Soon after Dawson received the letter, plaintiff told Dawson that the bakery job was becoming "impossible" for him, and he asked if there was a policy to protect him from discipline for taking sick days. Plaintiff also told Dawson he would like to transfer to a position at Costco's gas station rather than to keep working in the bakery. In the summer of 2008, plaintiff was transferred from the bakery to a new position at the Costco gas station.

But his troubles did not end there. At the gas station, plaintiff had a new supervisor—Joe Cefaratti—and they did not get along. Cefaratti made fun of plaintiff and threatened to send him back to the bakery. Cefaratti also repeatedly reprimanded plaintiff by means of so-called Employee Counseling Notices (ECNs), an institutional euphemism for disciplinary write-ups to document an employee's alleged workplace infractions.

In January 2009, Cefaratti issued plaintiff an ECN for excessive absences. Plaintiff refused to sign this ECN, contending that his absences were due to chronic back and neck pain and referencing his doctor's prior letter to Costco management.

Some weeks later, Costco implemented a program in spring 2009 to require its gas station attendants to promote American Express credit cards to customers. After plaintiff balked at participating in this program, Cefaratti issued an ECN in June 2009 to plaintiff as well as to two of his fellow gas station attendants for failure to promote the credit cards to customers. Plaintiff signed the ECN, but objected that he had been "harassed and threatened into doing this" and that he did not believe promoting credit cards was within his job description. When Dawson invited plaintiff to discuss the ECN with him, plaintiff did so but did not mention his disability as a reason why he could not participate in the credit card promotion program. Soon thereafter, however, plaintiff's physician sent another letter to Costco explaining that plaintiff's Tourette's syndrome caused him "difficulty during protracted interactions with customers concerning

4

promotional opportunities." Doc. #105-9 at 2. After this letter, plaintiff did not receive another ECN for failing to promote credit cards.

On September 27, 2009, plaintiff emailed a formal complaint of disability discrimination to Costco's regional vice president. The complaint was titled "Americans with Disability Act: Formal Complaint Statement," and it addressed concerns arising from his employment at both the bakery and the gas station. He complained that baker Muoio had teased and abused him, that his complaints to supervisors had resulted in minimal change in Muoio's behavior, that supervisors had ignored plaintiff's complaints about the physical difficulty of his bakery job, and that one of his supervisors had needlessly prolonged his transfer to the gas station.

Plaintiff's complaint also alleged mistreatment at the gas station. He alleged that, shortly after starting at the gas station in summer 2008, Cefaratti "tricked me into believing I had yet to work more shifts in the bakery . . . by hanging a fake gas station schedule." Doc. #105-7 at 48. Plaintiff heard from a co-worker that another supervisor had mocked how plaintiff would respond to the fake schedule, by saying, "Yeah that should get him twitching." *Ibid*.

On November 1, 2009, plaintiff supplemented his complaint to allege further abuses by Cefaratti. Plaintiff claimed that Cefaratti told him that "I can throw you to the wolves," with a suggestion that Cefaratti could transfer him back to the bakery to face continued harassment there. Doc. #88-5 at 10. Plaintiff also claimed that Cefaratti once told plaintiff that his "involuntary tics make me look like I was dancing to the music he was listening to." *Ibid.*

Plaintiff's complaint led to a personnel investigation by Costco's human resources department. Justin Callahan, an assistant vice president of human resources, interviewed 19 employees. In October 2009, Callahan released a draft report concluding that Muoio "subjected [plaintiff] to humiliation and abuse . . . over a period of seven years," and that there was "[v]ery

little evidence that this issue was ever addressed adequately." Doc. #105-7 at 53. Callahan cleared general manager Dawson of any wrongdoing and could not corroborate plaintiff's complaints about Cefaratti at the bakery. In November 2009, Callahan advised plaintiff that "although we could not confirm all of the details of your report, your complaint of inappropriate conduct in the bakery is valid," and Callahan assured him that "we are taking corrective action that we believe will prevent any further inappropriate conduct from occurring." Doc. #105-9 at 47.[2]

Plaintiff was not satisfied with Costco's conclusions or response. And so at some point beginning in late 2009, plaintiff began taking a small digital recorder to work to tape record his interactions with employees and customers. He hid the recorder in his pocket, allowing him to surreptitiously record every workplace interaction. At night after work, he uploaded the recordings to his personal computer. This secret tape recording activity continued for approximately two years. Doc. #101-1 at 12-13. In addition, plaintiff filed a disability discrimination complaint on January 26, 2010, with the Connecticut Commission on Human Rights and Opportunities (CHRO).

Plaintiff remained on the job at the gas station, and his conflicts with Cefaratti continued. Cefaratti issued five ECNs to plaintiff between February 2010 and November 2011, mostly for minor infractions including clocking in one hour early, removing a list of rules from the gas station, failing to complete an assigned weekly task, lying down on the job, and violating the dress code.

---

[2] In response to the Callahan report, Muoio was issued an ECN accusing him of violent conduct toward his co-workers. Management waived Muoio's three-day suspension. In addition, Dawson issued another of plaintiff's bakery supervisors an admonishment that "[y]our failure to properly follow-up on [plaintiff's] employee complaints is unacceptable." Doc. #105-9 at 37. Callahan wrote to Cefaratti stating that, although he could not determine whether Cefaratti had violated Costco's harassment policy, the allegations, if proven, would support disciplinary action, and warning Cefaratti to ensure that his future conduct complied with company standards.

In one incident in August 2011, a gas station customer allegedly threatened plaintiff. Plaintiff asked Costco for the security camera footage of the incident, and Costco denied his requests as a matter of policy. Subsequently, in October 2011, plaintiff wrote a note on the gas station whiteboard, within view of customers, stating that Costco management did nothing to respond to the assault against him. He was issued an ECN for that behavior, which documented his conduct as a potentially terminable offense under Costco's Employment Agreement.

In the meantime, after having previously filed a complaint with the CHRO, plaintiff filed the instant federal court lawsuit in March 2011 and principally alleged that he was subject to a hostile work environment on the basis of his Tourette's syndrome disability. Doc. #1. Through pretrial discovery for this court action, Costco learned that plaintiff had been secretly recording his interactions with customers and employees as described above. Plaintiff had previously signed a Costco Employment Agreement that included a list of terminable offenses. The list of terminable offenses included "Unauthorized collection, disclosure or misuse of confidential information relating to Costco, its members, employees, suppliers or agents including, but not limited to: . . . b. Recording a conversation without permission from all parties." Doc. #105-8 at 203.

Costco's corporate director of personnel—Brenda Weber—took charge of investigating this further. Weber interviewed several employees who plaintiff had secretly recorded, each of whom said that they had neither consented to nor known of plaintiff's recordings. She then interviewed plaintiff, asking him if he had received permission from the employees he recorded. Plaintiff responded that he had no comment and declined to say more. When asked if he had anything to add, he stated, "I'm Pete Marini and I work in the Gas Station at #312." Doc. #91-6 at 4. On the basis of Weber's investigation, Costco fired plaintiff on November 22, 2011.

**DISCUSSION**

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### Hostile Work Environment Claim (Count One)

I assume for the purpose of this ruling that the ADA—like Title VII—prohibits "hostile work environment" discrimination.[3] *See Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 51 n.4 (2d Cir. 2014) (noting "[s]everal of our sister circuits have recognized a hostile work environment under the ADA" but that "[w]e have not yet had occasion to consider this cause of

---

[3] Plaintiff has not suggested any manner in which his rights under CFEPA are broader than those under the ADA, and therefore plaintiff's CFEPA claims rise or fall on the same grounds as his claims under the ADA. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (applying the analytical framework from Title VII claims to ADA discrimination claims) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)); *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII.").

action"). For Title VII claims, a hostile work environment exists "where the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003)). Relevant factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

A hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (*e.g.*, his disability), rather than other reasons. *Ibid*; *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010). That is because the ADA protects against disability discrimination and is not otherwise a general civility code for the American workplace. *See, e.g.*, *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 97 (2d Cir. 2012).

Like Title VII, the ADA also requires a plaintiff to timely exhaust administrative remedies prior to seeking relief in court. To this end, a plaintiff must file an administrative complaint within 300 days of the complained-of conduct, and the basis for any subsequent federal court action must in turn be based on the conduct that could properly have been the subject of an administrative complaint. *See, e.g.*, *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 75 & n.5 (D. Conn. 2014) (citing 42 U.S.C. § 2000e-5(e)(1), as incorporated by reference into the ADA, 42 U.S.C. § 12117(a)).

This is not to say that evidence of hostile acts that occurred before the 300-day time period are necessarily irrelevant to a plaintiff's hostile work environment claim. To the contrary, "under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as 'an act contributing to that hostile environment [took] place within the statutory time period.'" *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010)).

Here, plaintiff filed his CHRO complaint on January 26, 2010. Therefore, in accordance with the 300-day limitations period, he must show that his hostile work environment claim is based on at least one discrimination-based hostile act that took place *after* April 1, 2009. If he is unable to do so, this poses an immense problem for plaintiff's case, because it would foreclose him from relying on his best evidence of hostility that occurred prior to the 300-day limitations period. Thus, it would foreclose him from relying on any of the alleged hostile acts he endured for seven years while at the bakery, because he left the bakery in summer 2008. It would also foreclose him from relying on numerous hostile statements that he alleges while he worked at the gas station, because these statements were made during his first few months at the gas station, before April 2009. These statements at the gas station include: Cefaratti's comment about how plaintiff's tics made it look like he was dancing to music; Cefaratti's fake-schedule ploy and the associated comment of another supervisor that this ploy would start plaintiff twitching; and Cefaratti's comment about throwing plaintiff "to the wolves," with its implicit suggestion that plaintiff could be re-transferred to the bakery to face more disability discrimination.

At oral argument, plaintiff identified only two allegedly hostile acts that fell within the 300-day time period. First, he pointed to the ECN that was issued in June 2009 on account of

10

plaintiff's failure to take part in credit card promotional activities. But there is no genuine issue of fact to suggest that this ECN was issued for reasons of plaintiff's disability. To the contrary, at least two other employees who worked with plaintiff and who did not have disabilities were also issued ECNs for the same conduct. Moreover, when plaintiff signed and wrote objections to the ECN, he did not cite his disability; only after the ECN was issued did plaintiff through his doctor's letter raise his disability as grounds for his inability to take part in credit card promotional activities, and no subsequent ECN issued against plaintiff for failure to take part in credit card promotional activity. *Cf. Felix v. New York City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) (requiring plaintiff to "show a causal connection" between his disability and the requested accommodation to receive ADA protections).

Second, plaintiff contended at oral argument that Costco's own investigations of plaintiff's disability complaints amounted to disability-based harassment. To be sure, this seems an oddly circular claim to make: that the very choice of an employer to investigate—rather than to ignore—a worker's harassment complaint is itself harassment of the worker. Nevertheless, one might suppose that an evil employer could opportunistically seize upon a plaintiff's complaint of discrimination to launch a disruptive and embarrassing investigation as a means to perpetuate a prior scheme of harassment and discrimination.

Recently, the Second Circuit has ruled that an employer's investigation of a harassment complaint "without more—that is, without additional particularized facts evidencing a retaliatory intent and resulting in, or amounting to, adverse job consequences for the complainant—cannot sustain a valid retaliation complaint." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 146 (2d Cir. 2014). It has further noted that "employees who complain of racial discrimination,

whether internally and/or through an EEOC complaint, may not claim retaliation simply because the employer undertakes a factfinding investigation." *Id.* at 147.

And for good reason this is so: an employer should be encouraged to investigate and remediate discrimination, rather than to ignore it for fear that any investigation will strengthen a plaintiff's claim. That is why an employer's investigation may be considered retaliatory only if the investigation is "conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination" *Ibid.* (internal quotation marks and citation omitted).

Here, no genuine fact issue suggests that Callahan's investigation was egregious or in any way improper. Plaintiff himself put the wheels in motion for this investigation by lodging a disability complaint with Costco's regional vice president, and there is no genuine fact issue to suggest that the investigation was a pretext or subterfuge, much less that the investigation involved abusive methods or means designed to harass or retaliate against plaintiff on account of his disability or complaints about disability. The investigation found misconduct by Muoio, and the fact that it did not otherwise corroborate all of plaintiff's claims does not signify that the investigation was no less than an instrument of harassment against plaintiff.

In short, plaintiff's hostile work environment claim is time-barred. Notwithstanding substantial evidence from before April 2009 to suggest that plaintiff was subject to a hostile work environment, plaintiff's claim fails for lack of evidence that any disability-based hostile acts occurred within the 300-day time period after April 2009. The Court therefore grants defendant's motion for summary judgment on Count One of the complaint.

*Breach of Contract (Count Two)*

Plaintiff's breach of contract claim is premised on Costco's "Employment Agreement" that governs its relationship with all its employees. Doc. #105-8 at 138-225. Defendant does not seriously dispute that the Employment Agreement is an agreement of the type that may create contractual obligations (depending on the specificity of language). "It is firmly established that 'statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer and employee.'" *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 532, 733 A.2d 197 (1999) (citation omitted).

The Employment Agreement that is part of the record in this case is prefaced by a message from Costco's Chief Executive Officer stating in part: that "[t]he Agreement is our pledge that you can feel secure in your job and that you will be treated fairly." Doc. #105-8 at 138. Each employee is required to sign an acknowledgement of receipt of the Agreement and that he or she "understand[s] that I am responsible for reading this Agreement and complying with the policies contained in the Agreement." *Id.* at 224. The employee acknowledgement further provides: "I understand that Costco has strict policies against unlawful discrimination, harassment and retaliation. I agree to abide by these policies." *Ibid.* Having titled the document as an "Employment Agreement" and requiring each employee to sign the Employment Agreement, defendant is in no position to contend that its Employment Agreement is incapable of creating contractual obligations.

The Employment Agreement sets forth at length Costco's policies against discrimination and on-the-job harassment. Section 2.2 of the Agreement provides that "[i]t always has been and continues to be Costco's policy that employees should be able to enjoy a work environment free from all forms of unlawful employment discrimination." *Id.* at 150. Section 2.3 of the Agreement

is titled "Americans with Disabilities Act (ADA)" and provides that "[i]t is Costco's intent to fully comply with our duty to provide reasonable accommodations to allow people with disabilities to apply for and perform their jobs." *Ibid*.

Section 2.4 of the Agreement sets forth an Anti-Harassment Policy in the following terms:

> It is Costco's intent to provide a working and shopping environment free from all verbal, physical and visual forms of harassment for employees, applicants, independent contractors, members, and suppliers. All employees are expected to be sensitive to and respectful of their co-workers and others with whom they come into contact while representing Costco. We prohibit all forms of harassment based upon any protected status, including . . . disability . . . or on the basis of any other protected status.

*Ibid*. The Employment Agreement provides "[e]xamples of the conduct we prohibit" to include "[e]pithets, slurs, negative stereotyping or threatening, intimidating or hostile acts that relate to the above-mentioned protected groups." *Id.* at 151.

Most significantly for purposes of this case, portions of the Employment Agreement are quite reasonably read to confer protections for employees from harassment beyond what protections may exist by law. So, for example, Section 2.2 of the Agreement provides that "Costco prohibits *unlawful* harassment of its employees, applicants, or independent contractors in any form" and that "[c]omplaints of *unlawful* employment discrimination or harassment should be reported as discussed below in Section 2.5," but further provides that "[i]n cases where investigation confirms the allegations, *appropriate corrective action will be taken, regardless of whether the inappropriate conduct rises to the level of any violation of law*." *Id.* at 150 (emphasis added).

14

To similar effect, the Agreement further provides that the meaning of "harassment" for purposes of an employee's protections under the Agreement may be broader than the legal definition of "harassment" as defined by law:

> Harassment can be difficult to define. Misconceptions abound. For this reason, we require you to use our harassment reporting policy without worrying about whether the conduct involved would be considered harassment in a legal sense.
>
> If you consider the conduct to be harassment, report it. This policy is intended to assist Costco in addressing not only illegal harassment, but also any conduct that is offensive or otherwise inappropriate in our work environment.

*Id.* at 151. And the Agreement additionally provides that "[a]nyone who is found to have violated our anti-harassment policy is subject to corrective action up to and including immediate termination of employment, *regardless of whether the violation amounts to a violation of law.*" *Id.* at 152.

The Employment Agreement does not contain any disclaimer language to the effect that its "super" anti-harassment provisions do not create legally enforceable protections beyond the protections of background law. Today's corporate employers compete not only on grounds of their raw ability to make, deliver, and sell goods and services at a low or reasonable cost but also on grounds of their corporate self-image as "good" corporate citizens. They likewise compete on grounds of their ability to attract employees by means of promises of innovative management practices that foster dynamic workplaces that are comfortable and safe. This is not to fault the fact that Costco has adopted progressive anti-harassment policies but only to make clear that these policies, as framed without disclaimer, may give rise to legally independent and enforceable obligations for the benefit of employees that rely on them.

Defendant contends that the ADA preempts any contractual provisions that parallel its protections. But nothing in the statute says so. Moreover, the provisions of the Employment

Agreement do not merely parallel but exceed the protections of the ADA, and so there is no basis to presume them to be preempted—that Congress would wish to stop employers from affording even broader disability rights than what Congress itself has enacted. *Compare CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455 (2008) ("Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination" (internal quotation marks and citation omitted)), *with Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176 (11th Cir. 2003) (discussing the legislative history of ADA and noting that the ADA does not preempt state laws that provide "equal or greater remedies" (citing 42 U.S.C. § 12201(b))); *see also Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 871 (7th Cir. 2011) (noting that "an employer may agree by contract to extend statutory legal protections [against employment discrimination] to an employee who might not be covered by the statute itself."); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 245 & n.6 (4th Cir. 1997) (enforcing contractual clause "provid[ing] that 'there shall be no discrimination or retaliation of any kind' against any person for engaging in protected activity" and explaining that "[t]he language 'of any kind' clearly requires a lower threshold of proof than the adverse employment action required to show a violation of" Title VII). The cases cited by defendant do not stand for the proposition that the ADA preempts private parties from contracting for protections against employee harassment that exceed those of the ADA.[4]

In short, at least so far as the Employment Agreement's anti-harassment provisions, they are enforceable and broader than the statutory protections afforded by the ADA. The same does not hold true for other aspects of anti-discrimination law that are referenced in the Employee

---

[4] Defendant relies on cases that involve no express contractual obligation akin to that undertaken by Costco in the Employment Agreement here—rather, the cases involve common law quasi-contract remedies that courts may allow when required by public policy, for which they consider whether a plaintiff has alternative statutory remedies available. *See* Docs. #87 at 36, #98 at 16-17. That analysis is not applicable here.

Agreement. For example, although the Agreement also guarantees that "[n]o employee will suffer retaliation for reporting incidents they believe in good faith to be a violation of Company policy or unlawful discrimination, harassment, or retaliation," Doc. #105-8 at 150, the Agreement does not contain language suggesting that its protections against retaliation are broader than the protections provided by background law. Nor does the Employment Agreement contain language suggesting that its protections for the disabled or against other adverse action related to a person's disability are broader than provided by background law.

Against this framework, I conclude that a genuine fact issue remains whether defendant breached its contractual obligations to plaintiff to protect him from harassment by reason of his disability. Because the Employment Agreement does not confine its anti-harassment protections to those of background law, I cannot conclude that the ADA and CFEPA statutes of limitations constrain plaintiff's right to relief as it may be predicated on Costco's broader and independent contractual obligations to maintain a workplace at which company management will effectively redress instances of harassment. Connecticut prescribes a six-year limitations period for a breach-of-contract claim, *see* Conn. Gen. Stat. § 52-576, and defendant has not sought summary judgment as to plaintiff's contract claim on statute-of-limitations grounds.

Nor can I conclude that no genuine issue of fact remains as to damages to plaintiff from defendant's alleged anti-harassment breach. For example, as is apparent from the results of the Callahan investigation, a genuine issue of fact suggests that plaintiff was subject to harassment within the scope of the Employment Agreement by Muoio and that defendant's failure to adequately redress this conduct may have resulted in cognizable harm to plaintiff.

Lastly, the complaint in this case alleges numerous breaches of contract that are not related to harassment or that relate to other workplace disputes such as about seniority and

scheduling. It also alleges that defendant failed to take disciplinary action against other employees for their misconduct. Defendant contends that plaintiff has failed to adduce evidence of or to show damages from these alleged non-harassment breaches (Doc. #87 at 37-38), and plaintiff's opposition fails to respond to this argument. "[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of [plaintiff's] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) ("[W]here the nonmoving party will bear the burden of proof on an issue at trial, the moving party may satisfy its burden [at summary judgment] by 'point[ing] to an absence of evidence to support an essential element of the nonmoving party's case.") (citation omitted). Accordingly, summary judgment is appropriate against plaintiff as to his contractual claims that do not involve allegations of harassment resulting in harm to plaintiff.

### *Promissory Estoppel (Count Three)*

Plaintiff has conceded that his promissory estoppel claim should be dismissed on its merits. Doc. #104 at 26 n.1.

### *Intentional Infliction of Emotional Distress (Count Four)*

A plaintiff claiming intentional infliction of emotional distress must establish four elements:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 526-27, 43 A.3d 69 (2012) (quoting

*Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000)).

As the Connecticut Supreme Court has further explained, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine," and "[o]nly where reasonable minds disagree does it become an issue for the jury." *Id.* at 527 (quoting *Appleton*, 254 Conn. at 210).

Moreover, the standard for conduct that suffices to establish a claim of intentional infliction of emotional distress is very high:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Ibid.* (quoting *Appleton*, 254 Conn. at 210-11).

Against this framework, plaintiff has failed to show a jury issue on the subject of intentional infliction of emotional distress. The defendant is a company that may be liable only for the acts of its agents or employees. To the extent that plaintiff might seek to attribute the abuses of Muoio to the company, this argument overlooks that a company is not liable for the intentional torts of its employees that are engaged in outside the scope of their employment. *See, e.g.*, *Williams v. Cmty. Solutions, Inc.*, 932 F. Supp. 2d 323, 334-35 (D. Conn. 2013); *cf. Swarna v. Al-Awadi*, 622 F.3d 123, 144-45 (2d Cir. 2010) (applying New York law). To evaluate the degree to which an employee was acting within the scope of his employment, "courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer." *Nathans v. Offerman*, 922 F. Supp. 2d 271,

275 (D. Conn. 2013) (citations omitted). An employer is not liable for an employee's unforeseeable and misguided attempt to serve his employer. *Id.* at 275-76. Although it is undisputed that Muoio's conduct occurred during business hours, humiliation and abuse of the type plaintiff alleges was not part of Muoio's job description and indeed was prohibited by the terms of the Employment Agreement.

Except for the conduct of Muoio, plaintiff has not identified any other conduct by any of defendant's employees that a reasonable jury could conclude were not merely hostile and insulting but were altogether atrocious and exceed all bounds of a civilized society. Moreover, to the extent that plaintiff faults supervisory personnel for failing to do more to redress reports of abuses, this does not allege intentionality as required for recovery on a theory of intentional infliction of emotional distress. *See Morrissey v. Yale Univ.*, 268 Conn. 426, 427-28, 844 A.2d 853 (2004); *see also Williams*, 932 F. Supp. 2d at 337-38 (declining to hold prison officials liable for intentional infliction of emotional distress based on their "nonfeasance or failure to intercede, even where [they] knew that misfeasance or harm was occurring or was likely to occur") (citations omitted)).

### *ADA and CFEPA Retaliation Claim (Count Five)*

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also* Conn. Gen. Stat. § 46a-60(a)(4) (analogous anti-retaliation provision under Connecticut law). ADA and CFEPA retaliation claims "are analyzed under the same burden-shifting framework established for Title VII cases." *Widomski v. State Univ. of New York (SUNY) at Orange*, 748 F.3d 471, 476

(2d Cir. 2014) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)); *see also Kaytor*, 609 F.3d at 556.

To prove that an employer illegally retaliated against an employee, the employee must show as a *prima facie* case that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia*, 313 F.3d at 719. If the employer presents a legitimate non-retaliatory reason for acting, then the employee must prove the reason is pretext for a retaliatory motive, and that the employer would not have acted "but for" his protected activity. *Id.* at 721; *see also Zann Kwan*, 737 F.3d at 843 ("a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision").[5]

Plaintiff's retaliation claim proceeds on two alternative theories. First, he claims that he was fired because of his protected activity of lodging complaints about defendant's hostile work environment. Second, he claims that if the evidence shows that he was fired because of his tape-recording activity, this was also unlawful retaliation because his tape-recording activity itself involved protected investigative activity for purposes of substantiating his ADA discrimination claim.

For the first of these claims, plaintiff contends he was terminated by reason of his multiple complaints about a hostile work environment. There is no dispute that the first three elements of a *prima facie* case have been satisfied by the fact of plaintiff's ADA-related

---

[5] There is some uncertainty whether a retaliation claim under the ADA or parallel provision of CFEPA should be governed by a "motivating factor" standard rather than a "but for" causation standard. *See, e.g.*, *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 2014 WL 4958166, at *5 n.3 (2d Cir. 2014). I conclude there is no genuine issue of fact under either causation standard.

complaints and his filing of an ADA lawsuit of which defendant was aware and by the fact of plaintiff's later termination. The only remaining (and related) issues are about causation: whether plaintiff has made a *prima facie* showing of causation and whether, in light of Costco's proffered reasons for firing plaintiff because of his secret tape recording activities, that Costco fired plaintiff because of his engaging in ADA-protected activity.

I conclude that plaintiff has failed to show a genuine issue of fact about causation. As an initial matter, he proffers no telltale direct evidence of a retaliatory motive, such as any comments by Costco stating an intent to get even with plaintiff for filing any of his ADA complaints.

Nor does he do any better by means of indirect evidence of causation. For example, there is little temporal nexus between any of his ADA complaints and his termination. He filed his internal complaint in September 2009, more than two years before he was fired in November 2011. He filed his CHRO complaint in January 2010, about 22 months before he was fired in November 2011. And he filed his federal court lawsuit in early March 2011, more than eight months before he was fired in November 2011.

True enough, the Second Circuit has declined to draw a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a plaintiff's protected activity and an allegedly retaliatory action. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). But the attenuated time spans here does little to suggest that plaintiff was fired because of his complaints about discrimination. Any inference of causation is further weakened by plaintiff's failure—as discussed for his hostile-work-environment claim above—to show that anyone at Costco engaged in any disability-based acts of harassment at any time after April 2009, more than two-and-a-half years before he was fired.

Moreover, even assuming that temporal proximity sufficed here to establish causation for purposes of plaintiff's *prima facie* case, it would not suffice to show that Costco's proffered reasons for firing plaintiff were pretextual. That is because "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847; *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014) (noting that "[t]hough five months might be enough to establish a prima facie case, temporal proximity alone is not enough to establish pretext in this Circuit" and that "a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact," but that plaintiff "has alleged nothing beyond temporal proximity to establish pretext") (internal quotation marks and citation omitted).

As for plaintiff's alternative claim that his termination was improper because it was based on his engaging in protected investigative activity, I need not decide whether an employee is ever privileged to engage in secret tape recordings at the workplace. It is enough to say that plaintiff cannot show on the facts of this case that Costco acted improperly by firing him after learning of his secret tape-recording activities. When Costco confronted plaintiff about his engaging in secret tape recordings, he did not claim that he did so in order to collect evidence for his ADA action. In name-rank-and-serial-number fashion, he failed to justify his action at all. In the absence of any claim at the time by plaintiff that he was engaged in protected activity, it was surely not retaliatory for Costco to terminate plaintiff in accord with its written employment policy against making such tape recordings. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (noting that "general corporate knowledge that the plaintiff has engaged in a protected activity" is necessary to show illegal retaliation).

Even had plaintiff made a claim of protected investigative activity, the scope of plaintiff's secret tape-recording activity well exceeded any potential need for purposes of his ADA

litigation. For example, plaintiff secretly tape-recorded his dealings with gas station customers. This had no possible relevance to his ADA claim. And Costco has an obvious interest in protecting its customers from surreptitious and scandal-worthy recording activities by Costco employees. Similarly, the fact that plaintiff tape-recorded *all* of his interactions with co-workers far exceeded any conceivable need for his ADA litigation in the absence of any claim that he was subject to harassment by all Costco employees.

Some of plaintiff's secret tape recordings were of telephone conversations, which amounted to a violation of Connecticut's criminal code. *See* Conn. Gen. Stat. § 52-570d. Other in-person recordings were potentially actionable on invasion of privacy grounds. *See Caro v. Weintraub*, 2010 WL 4514273, at *4-*5 (D. Conn. 2010). In like circumstances, the Second Circuit has concluded that secret tape recordings were not legitimate protected activity. *See Desardouin*, 708 F.3d at 106 (rejecting retaliation claim by employee who made secret recordings because it "was a felony and a violation of departmental policy" for employee to make secret recordings).

Although the parties disagree about whether plaintiff recorded any "confidential" conversations and therefore whether Costco's written employment policy applies to plaintiff's activities, the correct reading of the policy is irrelevant to the ADA retaliation claim here, because "[a]bsent discrimination, the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (Wisdom, J.). "An employer's good faith *belief* that an employee engaged in misconduct is a legitimate reason for terminating [him], and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a

pretext for discrimination." *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 238 (E.D.N.Y. 2012) (internal quotation marks and citation omitted).

Lastly, plaintiff argues that other employees—such as Muoio and Cefaratti—were not fired despite having engaged in misconduct. But plaintiff has not identified any other employee who engaged in similar, prolonged secret electronic tape recordings of customers and co-workers as plaintiff did and who was not terminated by Costco. Accordingly, for lack of identifying any similarly situated employees as appropriate comparators, plaintiff fails to raise an inference that he was fired for pretextual reasons and in retaliation for his prior ADA complaints. *See, e.g.*, *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010).

* * * * *

The foregoing analysis disposes of defendant's motion for summary judgment. In light of these rulings, I rule as follows on remaining pending motions:

### *Plaintiff's Cross-Motion for Partial Summary Judgment*

Plaintiff has cross-moved for partial summary judgment on his breach-of-contract claim and on his retaliation claim. I deny this motion in light of my rulings above. In the alternative, I deny plaintiff's cross motion for summary judgment on his breach-of-contract claim because it is predicated solely on an alleged breach—that he was fired in breach of his employment contract—that plaintiff failed to plead as a breach of contract in his complaint.

### *Plaintiff's Motion to Amend the Complaint*

Plaintiff has moved to amend his complaint to allege that he was fired in breach of his employment contract with Costco. I deny this motion on the ground that it is manifestly untimely, having been filed without good cause long after the deadline for amended pleadings,

after the close of discovery, and after the filing of motions for summary judgment. *See Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009).

### *Defendant's Motion for Sanctions for Spoliation*

Defendant moves for spoliation sanctions on the ground that plaintiff engaged in secret tape recordings for the alleged purpose of gathering evidence against Costco but then destroyed most of the recordings. In the absence of evidence that plaintiff knew he was violating any evidence preservation requirements when he failed to retain all of his recordings, I decline to impose sanctions in the form of dismissal. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Nor has there been apparent prejudice to defendant, as it appears that plaintiff's many hours of recording failed to yield any evidence to support his claims.

Accordingly, I deny the motion for sanctions. Nevertheless, in the event of a trial in this matter on the remaining anti-harassment breach-of-contract claim, defendant shall be free to argue any reasonable inference from the fact that plaintiff engaged in recordings without participants' consent, that he discarded many of his recordings, and that none of the recordings that he chose to retain apparently supports his claim of harassment.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment (Doc. #86) is hereby GRANTED in part and DENIED in part as follows: Counts One and Five of the second amended complaint (Doc. #37) are dismissed with prejudice as to claims alleged under the Americans with Disabilities Act and under the Connecticut Fair Employment Practices Act; Count Two of the complaint (breach of contract) is dismissed with prejudice as to all claims except those alleging violations of the anti-harassment provisions of the Employment Agreement; Count Three of the complaint (promissory estoppel) is dismissed with prejudice;

Count Four of the complaint (intentional infliction of emotional distress) is dismissed with prejudice. Plaintiff's motion to amend his complaint (Doc. #97) is hereby DENIED. Plaintiff's motion for summary judgment (Doc. #81) is hereby DENIED. Defendant's motion to strike plaintiff's Rule 56(a)(2) Statement and Supplemental Statement (Doc. #112) is hereby DENIED as moot in light of the Court's other rulings. Defendant's motion for sanctions (Doc. #86) is hereby DENIED.

It is so ordered.

Dated at Bridgeport this 1st day of December 2014.

/s/ Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge